UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────────

MICHELLE MARIE EBELINK, o/b/o C.D.E.,

                         Plaintiff,      **No. 6:14-cv-06726(MAT)**
                                         **DECISION AND ORDER**

              -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                         Defendant.

─────────────────────────────────────

## I.   Introduction

        Represented by counsel, Michelle Marie Ebelink ("Plaintiff")

has brought this action on behalf of her infant stepson ("C.D.E."

or "Claimant") pursuant to Title XVI of the Social Security Act

("the Act"), seeking review of the final decision of the

Commissioner of Social Security ("the Commissioner") denying

C.D.E.'s application for Supplemental Security Income ("SSI"). This

Court has jurisdiction over the matter pursuant to 42 U.S.C.

§§ 405(g), 1383(c).

## II.  Procedural Status

        On November 14, 2011, Plaintiff protectively filed an

application, T.162-41,[1] for SSI on behalf of C.D.E.,[2] who was six

years-old on the alleged onset date and seven years-old on the date

─────────────────────

[1]

        Numerals preceded by "T." refer to pages in the certified administrative
transcript filed by the Commissioner in connection with her answer to the
complaint.

[2]

        Plaintiff and her husband, C.D.E.'s biological father, obtained custody of
C.D.E. after they found him, at age 18 months, on the side of an interstate
highway. He had been left there while his biological mother was out partying.
T.37. C.D.E.'s biological mother has no visitation rights. T.37.

of the application. Plaintiff alleged that C.D.E. was disabled beginning on June 1, 2010, due to attention deficit hyperactivity disorder ("ADHD"), trouble being with and dealing with people, trouble focusing and concentrating, having feelings of worthlessness, being easily angered and emotional, and having violent tendencies. T.136. At the time of the application, Plaintiff was taking Concerta and Ritalin for his ADHD, melatonin for insomnia, and risperidone, an antipsychotic. T.137.

The SSI claim initially was denied on February 22, 2012. T.63. Plaintiff requested a hearing, which was held before administrative law judge Elizabeth W. Koennecke ("the ALJ") on May 14, 2013. T.30-51. The ALJ issued an unfavorable decision on July 12, 2013, T.13-26, finding C.D.E. not disabled. Plaintiff requested review by the Appeals Council, which was denied on October 22, 2014. T.1-4. This timely action followed.

The parties have filed cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The Court adopts and incorporates by reference the undisputed and comprehensive factual recitations contained in the parties' briefs (Dkt #8, Dkt #9-1). The record evidence will be discussed in further detail below, as necessary to the resolution of the parties' contentions. For the reasons that follow, the Court reverses the Commissioner's decision and remands the matter for the calculation and payment of benefits.

### III. Applicable Law

####    A.    Standard of Review

A determination by the Commissioner that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." or when decision is based upon legal error. See 42 U.S.C. § 405(g). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," a reviewing court may not substitute its judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). However, this deferential standard is not applied to the Commissioner's application of the law. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987).

####    B.    Legal Standard for Disability Claims of Children

To qualify as disabled under the Act, a child under the age of eighteen must have "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I).  By

regulation the Commissioner has promulgated a three-step analysis to determine whether a child is eligible for SSI benefits on the basis of a disability. Encarnacion ex rel. George v. Astrue, 586 F.3d 72, 75 (2d Cir. 2009) (citing 20 C.F.R. § 416.924, et seq.).

First, the ALJ determines whether the child is engaged in "substantial gainful activity." 20 C.F.R. § § 416.924(a), (b). Second, the ALJ considers whether the child has a "medically determinable impairment that is severe," in that it causes "more than minimal functional limitations." Id., § 416.924(c). If a severe impairment is present, the ALJ must then consider whether the impairment "meets, medically equals," or "functionally equals" a presumptively disabling condition listed in the regulatory "Listing of Impairments." Id., § 416.924(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The limitations caused by a child's severe impairment(s) are evaluated in the context of the following six domains of functioning:

(1) acquiring and using information;
(2) attending and completing tasks;
(3) interacting and relating with others;
(4) moving about and manipulating objects;
(5) caring for oneself; and
(6) the child's health and physical well-being.

20 C.F.R. § 416.926a(b)(1). "For a child's impairment to functionally equal a listed impairment, the impairment must 'result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain.'" Encarnacion, 568 F.3d at 75

(quoting 20 C.F.R. § 416.926a(a)). An "extreme limitation" is an impairment which "interferes very seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(I). A "marked limitation" is an impairment that "interferes seriously with [the claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I). "A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## IV. The ALJ's Decision

Applying the sequential evaluation utilized in adjudicating childhood SSI claims, the ALJ found that C.D.E. was a school-age child on November 14, 2011, the date application was filed, and was a school-age child at the time of decision. He had not engaged in substantial gainful activity since the application date. The ALJ determined that C.D.E. has the following "severe" impairments: ADHD, learning disorder, and emotional disturbance. According to the ALJ, although his treating pediatrician stated he likely has fetal alcohol syndrome, there is no objective evidence to establish this condition, and therefore she did not consider it a "severe"

impairment. T.17.[3] The ALJ found that C.D.E. does not have an impairment or combination of impairments that functionally equals the severity of the listings. See T.17-26. In particular, the ALJ found "less than marked" problems in all domains except for the domains of moving about and manipulating objects and health and physical well-being. In these two domains, the ALJ found "no" limitations. T.24, 26.

## V.   Discussion

### A.   Failure to Develop the Record

Plaintiff argues that the ALJ erroneously failed to develop the record when she did not obtain an opinion regarding C.D.E.'s functional limitations from his third grade teacher, Aimee Pagano ("Ms. Pagano").

"It is the rule in [the Second] [C]ircuit that 'the ALJ, unlike a judge in a trial, must [her]self affirmatively develop the record' in light of 'the essentially non-adversarial nature of a

---

[3]

The standard for diagnosing FAS includes a series of *clinical* indicators, including "[e]vidence of a complex pattern of behavior or cognitive abnormalities that are inconsistent with developmental level and cannot be explained by familial background or environment alone, such as learning difficulties; deficits in school performance; poor impulse control; problems in social perception; deficits in higher level receptive and expressive language; poor capacity for abstraction or metacognition; specific deficits in mathematical skills; or problems in memory, attention, or judgement." See Diagnosis of Fetal Alcohol Syndrome (FAS), CAN. CHILD. ADOLESC. PSYCHIATR. REV. 12(3):81-86 (Aug. 2003). A diagnosis of FAS can be made even in the absence of confirmed maternal alcohol exposure. Id. No single clinical feature can be used to diagnosis FAS, and "[n]o single diagnostic test is available to confirm FAS." Id. It thus appears that the ALJ may have erred at step two in requiring "objective evidence" of FAS in order to find it to be a "severe" impairment. As the Second Circuit has emphasized, step two sets a de minimis threshold. See Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995). Plaintiff, however, has not raised a challenge to the ALJ's step two finding.

benefits proceeding.'" Pratts v. Chater, 94 F.3d 34, 37 (2d Cir. 1996) (quotation omitted). This duty exists even when, as here, the claimant is represented by counsel. Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996). The Commissioner's "regulations describe this duty by stating that, '[b]efore we make a determination that you are not disabled, we will develop your complete medical history . . . [and] will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.'" Id. (quoting 20 C.F.R. § 404.1512(d)); see also 20 C.F.R. § 416.912(d).

Here, the record contained one teacher questionnaire from Claimant's second grade teacher, Catherine Green ("Ms. Green"), T.149, but Claimant was in third grade at the time of the hearing. His teacher, Ms. Pagano, had not completed a teacher questionnaire, and the ALJ found that this created a gap in the record, as evidenced by the following colloquy with Claimant's hearing counsel:

> ALJ: And I don't have a current teacher evaluation. The one I have at 3E is old, and I—in all these cases I want current teacher evaluations. So how long will it take you to get that to me?
> Atty: Your Honor, would you consider reviewing and considering the referral and the testing that I'm going to scan in? This is pretty exhaustive
> . . .
> ALJ: Again you've put me in a bad position because it's not before me. In general I want a teacher who actually deals with the child to address the domains. If you don't want to obtain that, if you want me to rely—it's your case, Counsel. So you want me to rely on what you're going to send in?

> Atty: *Your Honor, I'll be happy to get a teacher's questionnaire. Can I have two weeks to do that?*
> ALJ: All right. That's the 28th. Okay. I'm just putting notes in the computer for the staff.

T.34 (emphasis supplied). Apparently, Plaintiff's hearing counsel, who is not representing her in this appeal, did not submit a teacher's questionnaire from Ms. Pagano. In her decision denying benefits, the ALJ addressed this issue as follows:

> I requested that [Claimant's hearing counsel] obtain and submit a teacher questionnaire and the representative indicated she wanted me to rely on the evidence she was submitting instead, which is her right as the representative to present her case as she sees fit. She then stated that she would attempt to obtain a teacher questionnaire but did not submit one. As the representative is experienced in Social Security practice, *the undersigned has concluded based on the representative's statement, that all available outstanding evidence including any available treating source assessments of residual functional capacity have been requested and submitted.*

T.13, 34 (emphasis supplied).

The Commissioner argues that the ALJ possessed "numerous educational records" and a "complete medical history including contemporaneous treatment notes, examination finding and medical assessments spanning the entire relevant period and well before it" and "[a]ccordingly, there was no affirmative duty for the ALJ to obtain additional records." Defendant's Memorandum of Law ("Def's Mem.") at 13, 15 (Dkt #9-1). This argument is unavailing for several reasons. First, as the transcript of the hearing makes clear, the ALJ herself identified a significant gap in the record caused by the absence of a teacher questionnaire by Claimant's

current teacher. Thus, the ALJ affirmatively found that she did *not* possess a "complete medical [or educational] history" of C.D.E. The Commissioner's attempt to assert otherwise misstates the record and amounts to an impermissible *post hoc* rationalization for the ALJ's decision. See, e.g., Newbury v. Astrue, 321 F. App'x 16, 18 (2d Cir. 2009) ("A reviewing court '"may not accept appellate counsel's post hoc rationalizations for agency action."'") (quoting Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999); further quotation omitted). Second, contrary to the Commissioner's contention, the ALJ cannot discharge her duty to complete the record by relying on hearing counsel's unexplained failure to submit a teacher questionnaire from Ms. Pagano. While the ALJ assumes that Claimant's hearing counsel actually attempted to obtain the teacher questionnaire but was unable to do so, the record is silent on this issue. Thus, the ALJ's assumption was based purely on her own surmise. As noted above, an ALJ's heightened duty to develop the record applies even when the claimant is represented by an attorney. Here, after the ALJ identified what she believed was a significant gap in the record, she neither inquired into hearing counsel's failure to submit the missing teacher questionnaire after the record was held open for two weeks; nor did the ALJ offer hearing counsel any assistance in obtaining the requested questionnaire from Ms. Pagano. The ALJ, for instance, could have utilized her authority to issue a subpoena. See, e.g., Carroll v. Sec'y of Dept. of Health & Human Servs. of U.S., 872 F. Supp. 1200,

-9-

1204 (E.D.N.Y. 1995) (noting that where a record is incomplete, "an ALJ may issue a subpoena requiring the production of any evidence relating to a matter under his or her consideration" pursuant to 42 U.S.C. § 405(d); in the event that a person served with a subpoena refuses to comply, the Commissioner may seek enforcement by a federal district court under 42 U.S.C. § 405(e)).

Normally, the Court would find this to be an error warranting remand for further development of the record. See, e.g., Merriman v. Comm'r of Soc. Sec., No. 14 Civ. 3510(PGG)(HBP), 2015 WL 5472934, at *18 (S.D.N.Y. Sept. 17, 2015) (failure to develop record required remand to obtain opinion on functional limitations from treating source; court rejected Commissioner's argument "that the record was sufficient because plaintiff's counsel stated that he did not believe plaintiff's tennis elbow prevented him from working and the ALJ left the record open for two weeks, directing plaintiff's counsel to submit any additional records from Dr. Fond" because that "does not relieve the ALJ of his duty to develop the record") (citation omitted). However, the Court has reviewed the assessment of Claimant referenced by Plaintiff's hearing counsel, namely, the Psycho-Educational Evaluation, T.278-87, conducted by Kimberly E. Birmingham, Psy. D., upon Ms. Pagano's referral. Both Ms. Pagano and Plaintiff provided extensive input into the evaluation, which is, as hearing counsel noted, an "exhaustive" assessment of Claimant's problematic behaviors and emotional

issues. As discussed further below, it provides strong evidence supporting Plaintiff's claim on behalf of C.D.E.

## B.  Decision Not Based on Substantial Evidence

The ALJ found that Claimant has "less than marked" limitations in four the six domains, including the domains of interacting and relating with others and caring for oneself.[4] Plaintiff argues that these findings are based on an improper cherry-picking of the record and an erroneous weighing of the treating and non-treating opinions. Plaintiff notes that a treating physician, a non-examining State agency review physician, and Claimant's second grade teacher all found that Claimant has "marked" limitations in both of these domains, but the ALJ improperly discounted these restrictive portions of these individuals' opinions.

### 1.  Treating Pediatrician

On September 14, 2011, Claimant established care with pediatrician Joan Flender, M.D., of Stony Brook Pediatrics. T.213. On September 28, 2011, Claimant returned to see Dr. Flender with his stepmother and father, because both parents were concerned that Claimant "wants to hurt animals" and is "very mean" to them; he

---

[4] In the interacting and relating with others domain, the regulations state as follows: "[W]e consider how well you initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). In the caring for onself domain, the regulations provide as follows: "[W]e consider how well you maintain a healthy and emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area." 20 C.F.R. § 416.926a(k).

"[c]annot be left alone with pets and recently he caught a bird and put a str[a]w through its eye. He is angry a lot and threatens to hurt three ½ sibs and others. He talks and draws about hurting and killing a lot." T.206.[5] Dr. Flender diagnosed Claimant with ADHD, hyperactive type; sleep disorder; and fetal alcohol syndrome ("FAS"), and noted that he was at risk for bipolar disorder based upon his FAS diagnosis. She continued Claimant on Concerta for ADHD, and added an end-of-the-day dosage of Ritalin to help with his behavioral problems after school. T.207. She also prescribed melatonin for sleep, and Risperdal[6] for his abnormal behaviors. T.207. Dr. Flender discussed with Claimant's parents "that this will be long term treatment and monitoring" with particular attention to "[s]afety issues at home (no guns, knives up high, close supervision.)." T.207. Claimant returned to see Dr. Flender on October 20, 2011, and his medication regime was modified to increase the Risperdal dosage and discontinue the Ritalin as Plaintiff reported that it was not helping him. T.205. On December

---

[5]

At the hearing, Plaintiff explained that the bird was in a cage, and Claimant took a sharpened pencil and "stabbed the bird right through the eye and killed [it] . . . [a]nd thought it was funny afterwards." T.46. Plaintiff testified to other acts of violence by Claimant toward household pets, and noted that she is trying to re-home her three ferrets because Claimant has "been taking pencils, sharpened pencils, and sticking them through the cage and trying to poke them in their eyes." T.45.

[6]

Risperdal is a trade name for risperidone, an atypical anti-psychotic. It is used to treat schizophrenia in adults and teenagers as well as behavior problems such as aggression, self-injury, and sudden mood changes in teenagers and children 5 to 16 years of age.
See https://www.nlm.nih.gov/medlineplus/druginfo/meds/a694015.html (last accessed Dec. 29, 2015).

7, 2011, Dr. Flender completed a Childhood Disability Evaluation Form and opined Claimant has "marked" limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, caring for himself, and health and physical well-being. T.244. To support her opinion, Dr. Flender referred to her attached treatment note from September 28, 2011, and stated that he has "emotional impairments indicative of fetal alcohol syndrome. Aggressive, inattentive, does not get along well w/others." T.245. Dr. Flender opined that Claimant "will need extra supervision, counseling, and medical care for many years to see how this progresses and to help him learn to manage his behaviors." Id.

There is no dispute that Dr. Flender qualifies as a "treating source" because she is Claimant's own physician who has provided him with medical treatment and evaluation and has had an ongoing treatment relationship with him. See 20 C.F.R. § 416.902. The medical opinions of a treating physician regarding "the nature and severity" of a claimant's conditions are given "controlling weight" as long as they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and are not inconsistent with other substantial evidence contained in the record. 20 C.F.R. § 416.927(d)(2) Where an ALJ declines to accord controlling weight to a treating physician's opinion, the ALJ "must consider various 'factors' to determine how much weight to give to the opinion[,]" Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) (per curiam) (quoting 20 C.F.R. § 404.1527(d)(2)), such as

"(I) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion.'" Id. (quoting 20 C.F.R. § 404.1527(d)(2)). A corollary to the treating physician rule is the so-called "good reasons rule," which is based on the regulations specifying that "the Commissioner 'will always give good reasons'" for the weight given to a treating source opinion. Halloran, 362 F.3d at 32 (quoting 20 C.F.R. § 404.1527(d)(2); citing 20 C.F.R. § 416.927(d)(2); Schaal v. Apfel, 134 F.3d 496, 503-04 (2d Cir. 1998)). Because the "good reasons" rule exists to "ensur[e] that each denied claimant receives fair process," Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007), an ALJ's "'failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight' given 'denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" Blakely, 581 F.3d at 407 (quoting Rogers, 486 F.3d at 243; emphasis in Blakely).   Here, the ALJ rejected Dr. Flender's opinion because she found it was "unsupported by any direct observation [by Dr. Flender] of abnormal behaviors." T.20; see also id. ("The claimant's mother told Dr. Flender that the claimant was

mean to animals, cannot he left alone with pets, talks and draws about killing and hurting others, and likes to play with fire. However, these complaints of behavioral issues are not corroborated by objective medical evidence."). This reasoning is unsupported by the law. It is well-established in the Second Circuit that "[a] patient's report of complaints, or history, is an essential diagnostic tool.'" Green-Younger v. Barnhart, 335 F.3d 99, 107 (2d Cir. 2003) (quoting Flanery v. Chater, 112 F.3d 346, 350 (8th Cir. 1997); alteration in original)); see also id. (stating that "[t]he fact that [the doctor] also relied on [the claimant]'s subjective complaints hardly undermines his opinion as to her functional limitations"). Moreover, the ALJ's reasoning is disingenuous and contrary to common experience. The only way Dr. Flender could be expected to have observed personally Claimant's abnormal behaviors, including acts of extreme cruelty toward family pets and threats of violence towards his siblings, is if she were living with Claimant. The unreasonableness of such an expectation is obvious. Indeed, the Second Circuit has held that "[w]hile a claimant must show that the physical or mental impairment by reason of which he claims to be disabled 'results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques,' 42 U.S.C. § 423(d)(3), *this does not mean that medical opinion must necessarily be supported by 'objective' clinical or laboratory findings*.'" McLaughlin v. Sec'y

-15-

of Health, Educ. and Welfare of U.S., 612 F.2d 701, 704 (2d Cir. 1980) (quoting Cutler v. Weinberger, 516 F.2d 1282, 1286-87 (2d Cir. 1975); emphasis supplied).

The ALJ also discredited Dr. Flender's report because the doctor "does not note any inattention or impulsiveness during office visits." T.17. As initial matter, this justification is analogous to the disfavored "sit and squirm" test, whereby an ALJ discounts a claimant's symptoms simply because he can sit through a hearing. See Cavanaugh v. Astrue, No. 1:08-CV-0637 (LEK/VEB), 2009 WL 4264370, at *9 (N.D.N.Y. Nov. 20, 2009) (ALJ's finding of less than marked limitation in domain of attending and completing tasks not based on substantial evidence where ALJ relied on "his own lay observations [of the child claimant] during the single, short hearing"). Further, it ignores the Commissioner's regulations that "require the ALJ to consider the effects of a structured or highly supportive setting . . . on the claimant's functioning and, if the claimant's symptoms or signs are controlled or reduced by the structured environment, the ALJ is required to consider the claimant's functioning outside of the highly structured setting." Smith v. Massanari, No, 00-CV-00402, 2002 WL 34242375, at *6 (W.D.N.Y. Mar. 17, 2002) (citing 416.924c(d)). The relatively brief visit with Dr. Flender at her office is certainly a very "structured . . . setting," 20 C.F.R. § 416.924c(d), and it is not surprising that C.D.E.'s behavior was unremarkable there. See Williams ex rel. D.A.W. v. Astrue, No. 08 Civ. 6375(LBS), 2009 WL

3754391, at *9 (S.D.N.Y. Nov. 5, 2009) (stating that "[i]mprovement[s] based on a structured special education environment and the efforts of teachers and therapists [are] insufficient to support a finding that [the claimant's] limitations are not marked"). Moreover, the behavior that prompted this visit to Dr. Flender (Claimant's torturing of animals) could not possibly have been demonstrated by Claimant or observed by the doctor in that setting. The ALJ's errors in regard to Dr. Flender's opinion were significant.

## 2.    State Agency Review Physician

On February 21, 2012, non-examining State agency review physician J. Pauporte, M.D., Pediatrics completed a Childhood Disability Evaluation Form, opining that Claimant has a "marked" limitation in the domain of interacting and relating to others and "less than marked" limitations in the domains of acquiring and using information, attending and completing tasks, and caring for himself. T.254-56. In supporting his opinion that Claimant has a "marked" limitation, Dr. Pauporte stated that Claimant "is a threat to mother and siblings, [engages in] extreme cruelty to animals. Is angry and draws about hurting people. Likes to play with fire. 12/11 report from [Dr. Flender] he will need RX for many years to come." T.253. Dr. Pauporte thus agreed with treating physician Dr. Flender's assessment of the severity of C.D.E.'s limitations in the domain of interacting and relating with others.

-17-

State-agency medical consultants such as Dr. Pauporte are "highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I). In contrast to opinions issued by treating sources, opinions rendered by State-agency medical consultants are not entitled presumptively to any particular weight. See 20 C.F.R. § 416.927(f)(2)(I) ("Administrative law judges are not bound by any findings made by State agency medical or psychological consultants[.]"). Here, as discussed above, Dr. Flender's treating source opinion was not given controlling weight, and thus the ALJ was required to explain the weight accorded to Dr. Pauporte's opinion. See id. ("Unless [a] treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant[.]").

The ALJ assigned differing weights to certain portions of Dr. Pauporte's opinion, specifically, the ALJ discounted Dr. Pauporte's finding of a "marked" limitation and assigned it only "little weight" because it "is based on the report of the Claimant's stepmother, rather than objective evidence." T.20. Again, the ALJ misapplied the law, which does not mandate the presence of "objective" findings to support a claimant's allegations of disability or a medical source's opinion. See, e.g., Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979) ("It has been

established, both in this Circuit and elsewhere, that subjective
pain may serve as the basis for establishing disability, even if
such pain is unaccompanied by positive clinical findings or other
'objective' medical evidence.") (citations omitted). Notably, the
ALJ assigned greater weight to the parts of Dr. Pauporte's opinion
finding "less than marked" limitations in other domains; that is,
the ALJ weighed more heavily the parts of Dr. Pauporte's opinion
supporting the ALJ's unfavorable decision. "While ALJs are entitled
to resolve conflicts in the record, they cannot pick and choose
only evidence from the same sources that supports a particular
conclusion." Royal v. Astrue, NO. 5:11-CV-456(GTS/ESH), 2012 WL
5449610, at *6 (N.D.N.Y. Oct. 2, 2012); accord, e.g., Proper v.
Comm'r of Soc. Sec., No. 1:12-cv-0098(MAT), 2014 WL 7271650, at *14
(W.D.N.Y. Dec. 18, 2014) (where "the ALJ relied on an isolated
portion of the record to support his belief that Plaintiff was
'overexaggerating his symptoms,'" the ALJ engaged in an improper
selective reading of the record). The illegitimacy of the ALJ's
reason for rejecting Dr. Pauporte's opinion that Claimant has
"marked" limitations in this domain, combined with the ALJ's
weighing more heavily of other parts of Dr. Pauporte's opinion,
indicates that the ALJ engaged in impermissible cherry-picking of
the record. See Nix v. Astrue, No. 07-CV-344, 2009 WL 3429616, at
*7 (W.D.N.Y. Oct. 22, 2009) ("It is a fundamental tenet of Social
Security law that an ALJ cannot pick and choose only parts of a

medical opinion that support his determination.") (citation omitted). This is also an error warranting remand.

### 3.   **Claimant's Second Grade Teacher**

On January 30, 2012, Claimant's second grade teacher Ms. Green completed a Teacher Questionnaire assessing Claimant's limitations across the six domains. T.142-49.  In the domain of attending to and completing tasks, Ms. Green found no problems, provided that Claimant was taking his medication. T.144. Likewise, she found no problems in moving about and manipulating objects. T.146. However, in the domain of interacting and relating to others, Ms. Green opined that Claimant has a "serious"[7] problem in introducing and maintaining relevant and appropriate topics of conversation; and "obvious" problems in expressing anger appropriately; following rules; taking turns in conversation; and using adequate vocabulary. T.145. To support this she noted Claimant required behavior modification strategies (use of Silly Putty to manipulate during whole group instruction, and advance notification in upcoming transitions), and that he did not often engage in conversation. T.145. With respect to caring for himself, Ms. Green opined that Claimant has "serious" problems in handling frustration appropriately and in identifying and appropriately asserting emotional needs and "obvious" problems in being patient when

---

[7]    The Teacher Questionnaire does not define these terms. The possible ratings are "[n]o problem," "[a] slight problem," "[a]n obvious problem," "[a] serious problem," and "[a] very serious problem." T.147.

necessary and in responding appropriately to changes in his own mood. T.147. Ms. Green also found "obvious" problems in reading and comprehending written material, understanding and participating in class discussions, providing organized oral explanations, expressing ideas in written form, and learning new material. T.143. Notwithstanding Ms. Green's assessment of "serious" and "obvious" problems in the domains of interacting and relating with others and caring for self, the ALJ determined that Ms. Green's opinion should be "given great weight in determining the claimant's limitations in the six broad domains of functioning because, as the claimant's teacher, she sees the claimant regularly and is able to compare his abilities, functioning, and limitations with that of same age children." T.19. However, the ALJ erroneously failed to explain how Ms. Green's finding of "serious" and "obvious" limitations within these two domains supports the ALJ's finding that Claimant has "less than marked" limitations in these same domains. Indeed, such a conclusion is possible only by ALJ's selective application of those parts of Ms. Green's opinion that support her conclusion of non-disability. This was error. See, e.g., Beck v. Colvin, No. 6:13-CV-6014(MAT), 2014 WL 1837611, at *13 (W.D.N.Y. May 8, 2014) ("The ALJ ignored the portions of [the doctor's] reports in which he strongly opines that if Plaintiff were placed in a full-time competitive work-environment, her depression and anxiety symptoms would worsen and she likely would decompensate. The ALJ

improperly cherry-picked from [that doctor's] opinions only the information that purportedly favors a finding of no disability.").

## C.   Inadequate Credibility Finding

Plaintiff argues that while the ALJ acknowledged her duty to make a credibility finding regarding Plaintiff, who testified at the hearing, she nevertheless failed to perform the required evaluation of Plaintiff's testimony.

Where, as here, the claimant is a minor and "is unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent." St. Louis ex rel. D.H. v. Comm'r of Soc. Sec., 28 F. Supp.3d 142, 151 (N.D.N.Y. 2014) (quoting Jefferson v. Barnhart, 64 F. App'x 136, 140 (10th Cir. 2003)). In such cases, the ALJ must make specific findings concerning the credibility of the parent's or guardian's testimony, Williams o/b/o Williams v. Bowen, 859 F.2d 255, 260-61 (2d Cir. 1988), and must set forth any finding that the witness is not credible "with sufficient specificity to permit intelligible plenary review of the record." Id. (citation omitted); see also SSR 96-7p, 1996 WL 374186, at *2 (S.S.A. July 2, 1996) ("5. It is not sufficient for the adjudicator to make a single, conclusory statement that 'the individual's allegations have been considered' or that 'the allegations are (or are not) credible.' It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms.").

As Plaintiff points out, the ALJ recited the boilerplate summarizing the two-step credibility analysis set forth in the regulations, T.18, but said nothing at all about Plaintiff's testimony regarding the intensity and persistence of Claimant's symptoms and limitations in functioning caused by his multiple severe impairments. The ALJ's failure to provide any rationale for questioning Plaintiff's credibility is an error warranting remand.

## VI. Remedy

Under 42 U.S.C. § 405(g), the district court has the power to affirm, modify, or reverse the ALJ's decision with or without remanding for a rehearing. The Second Circuit "has recognized delay as a factor militating against a remand for further proceedings where the record contains substantial evidence of disability." McClain v. Barnhart, 299 F. Supp.2d 309, 310 (S.D.N.Y. 2004) (citations omitted). Such is the case here. Indeed, lengthy delays in awarding benefits are especially detrimental in childhood SSI cases. See, e.g., Maldonado ex rel. Maldonado v. Apfel, 55 F. Supp.2d 296, 298 (S.D.N.Y. 1999) (noting that SSI benefits for children "were intended to flow to them at the time of their need to enable them to overcome their disabilities and enter society"); H.R. REP. No. 92-231 (1971), reprinted in 1972 U.S.C.C.A.N. 4989, 5134 (stating that SSI was intended to provide children from low-income households with "special assistance in order to help

them become self-supporting members of our society").[8] The standard for directing a remand for calculation of benefits is met when the record persuasively demonstrates the claimant's disability, <u>Parker v. Harris</u>, 626 F.2d 225, 235 (2d Cir. 1980), and where there is no reason to conclude that the additional evidence might support the Commissioner's claim that the claimant is not disabled, <u>Butts v. Barnhart</u>, 388 F.3d 377, 385-86 (2d Cir. 2004). Here, none of the regulatory factors support a decision not to afford controlling weight to treating pediatrician Dr. Flender's opinion finding "marked" limitations in, <u>inter alia</u>, the domains of interacting and relating with others and caring for oneself. Dr. Flender's opinion is well supported by the evidence of record and was adopted by non-examining review physician, Dr. Pauporte. <u>See</u> <u>Beck</u>, 2014 WL 1837611, at *15 ("Substantial evidence exists in the record to warrant giving deference to the opinions of Plaintiff's treating psychiatrist, and when that deference is accorded, a finding of disability is compelled.") (citing <u>Spielberg v. Barnhart</u>, 367 F. Supp.2d 276, 283 (E.D.N.Y. 2005) ("[H]ad the ALJ given more weight to the treating sources, he would have found plaintiff disabled. . . .")). The ALJ only was able to discount Dr. Pauporte's agreement with Dr. Flender's conclusion that Claimant has "marked" limitations in the domain of interacting and

---

[8]    C.D.E.'s case is precisely the type of situation in which childhood SSI benefits are critical. The record here indicates that at least one point, Claimant was forced to go off his much-needed medications because his parents had no insurance and could not afford to pay for them, T.262, and he was not doing well at school.

relating with others by improperly parsing the record, as discussed
further above. Dr. Flender's opinion likewise was supported by the
Psycho-Educational     Evaluation,     T.278-87,     conducted     by
Dr. Birmingham, who found, inter alia, that Claimant struggles to
play with peers and his siblings, has a short attention span even
on   medication,   lacks   self-control,   and   is   often   unhappy,
aggressive, and threatening with others. T.278. In connection with
the evaluation, Ms. Pagano "reported a significant level of
emotional difficulty" and assessed that Claimant "is experiencing
more difficulty than 99% of his same age peers." T.283.  Ms. Pagano
expressed "significant concern," the highest level of concern based
on   the   evaluation's   rating   scale,   regarding   Claimant's
externalizing,   hyperactivity,   conduct   problems,   aggression,
depression,   attention   problems,   atypicality,   withdrawal,   and
adaptability.   T.283.   The   Psycho-Educational   Evaluation,   which
contained   input   from   Ms.   Pagano,   who   had   extensive   personal
knowledge   of   Claimant's   behavioral   issues,   is   supportive   of
Dr. Flender's finding that Claimant has "marked" limitations in the
domain   of   caring   for   oneself.   These   marked   limitations   in   this
domain,   as   well   as   the   domain   of   interacting   and   relating   with
others,   also   were   apparent   in   second   grade,   as   evidenced   by
Ms.   Green's   Teacher   Questionnaire,   discussed   above.   In   sum,   the
record   contains   compelling   evidence   of   C.D.E.'s   disability   on
account of having a "marked" limitation in more than one domain of
functioning.   Remand   solely   for   the   calculation   of   benefits   is

therefore appropriate, because "application of the correct legal principles to the record could lead to only one conclusion." DeJesus v. Chater, 899 F. Supp. 1171, 1179 (S.D.N.Y. 1995), namely, that C.D.E. is disabled.

## VII. Conclusion

For the reasons discussed above, the Commissioner's motion for judgment on the pleadings (Dkt #9) is denied. Plaintiff's motion for judgment on the pleadings (Dkt #7) is granted. The Commissioner's decision is reversed, and the matter is remanded for calculation and payment of benefits.

**SO ORDERED.**

S/Michael A. Telesca

_____
     HON. MICHAEL A. TELESCA
     United States District Judge

Dated:     December 30, 2015
           Rochester, New York.